## NAVARRO OIL COMPANY V. JOHN T. CROSS.

No. 7877. Decided May 13, 1942.
Rehearing overruled June 10, 1942.
(162 S. W., 2d Series, 677.)

*Farish, Durno & Gordon,* of Houston, and *Lightfoot, Robertson & Gano,* of Fort Worth, for plaintiff in error.

The Court of Civil Appeals erred in affirming the action of the lower court in sustaining a general demurrer to plaintiff's petition, and in holding that under the lease the lessee obligated itself to pay to the State all sums of money which might

be required under the law, over and above the $12,000.00 recited to have been paid to the land owner. Renegar v. Fort Worth Transit Co., 143 S. W. (2d) 443; Walters v. Great Natl. Life Ins. Co., 132 Texas 454, 124 S. W. (2d) 850; 33 Texas Jur., 593-604.

*Montague & Fannin,* of Fort Worth, for defendant in error.

In accepting the $12,000.00 the defendant violated no statutory provision of the relinquishment act, and did not purport to accept any part of it for the benefit of the State, or as agent for the State. Foard County v. Sandifer, 105 Texas 420, 151 S. W. 523; Globe Ind. Co. v. Barnes, 288 S. W. 121; 29 Tex. Jur., 707.

MR. JUDGE BREWSTER delivered the opinion of the Commission of Appeals, Section A.

This suit arose under Arts. 5367 et seq., R. S., 1925, commonly known as the *Relinquishment Act.* A general demurrer to plaintiff's first amended original petition was sustained and the case dismissed when plaintiff refused to amend. The order of the trial court was affirmed by the Court of Civil Appeals, at Fort Worth. 150 S. W. (2d), 117.

Plaintiff alleged that on February 8, 1928, the defendant Cross executed and delivered to it an oil and gas lease on 160 acres of land in Winkler County, Texas, by which it acquired an undivided 7/8 interest in all oil and gas under said land with the right to development therefor; that the consideration was (1) $12,000.00 cash paid to Cross, (2) $10,000.00 overriding royalty payable out of 1/4 of the oil, (3) delay rental of $160.00 per year and (4) ten cents per year per acre to the State of Texas; that the lease contract provided that "lessor (Cross) hereby warrants and agrees to defend the title to said land and agrees that lessee at its option may discharge any tax mortgage or other lien upon said land and in event lessee (Navarro Oil Company) does so, it shall be subrogated to such lien * *"; that said land belonged to the School and Asylum lands of the State and had been sold to Cross on March 9, 1926, with a mineral classification and the resulting reservation to the State of the oil and gas underlying it; that Cross executed the lease under authority of the *Relinquishment Act,* supra, under which, as construed by the Supreme Court, the State became entitled to receive 1/2 of

the cash consideration, bonus, or down payments named in the lease, to secure which it enjoyed a first lien on the oil and gas in and under the land; that the $12,000.00 bonus paid Cross was paid to him individually and as agent for the State of Texas and that $6,000.00 thereof should have been paid over by him to the State but that he had not done so and had, therefor, wrongfully received the same from plaintiff; that in the year 1938 the State had demanded said $6,000.00 of plaintiff, sued it therefor and recovered judgment and that it had satisfied the judgment. Wherefore, plaintiff alleged, in three counts, (1) that Cross had breached the covenant of warranty contained in the lease, (2) that it had become subrogated to the right of the State to demand said $6,000.00 of Cross and to its lien to secure the same, and (3) that having discharged a duty which, as between it and Cross, should have been discharged by the latter, it was entitled to be indemnified by Cross; and it prayed judgment for $6,000.00, interest and costs and for general and special relief.

■ The trial court erred in sustaining the general demurrer. It was first stated in Green v. Robison, Land Commissioner, 117 Texas, 516, 8 S. W. (2d) 655, handed down on June 25, 1928, that the State is entitled to one half of any bonus paid for an oil and gas lease on School and Asylum lands. Some have said that holding was *dictum*. Be that as it may, the question was definitely set at rest by Justice Sharp in Empire Gas & Fuel Co. v. State of Texas, 121 Texas, 138, 47 S. W. (2d) 265, wherein suit was brought by the State against Empire Gas & Fuel Co., lessee, and J. H. Tippett, lessor, jointly and severally, to recover one half of a bonus of $16,800.00 paid Tippett by the company for a lease on described school lands and one-half of $1.00 per acre rental. Both defendants answered that under the *Relinquishment Act* the State was entitled only to 1/16 of the production and ten cents per acre per annum, all bonuses and other delay rentals belonging to the lessor-owner. Empire Gas & Fuel Company also answered, by cross action against Tippett, that it had paid the money to him; that if anything was due the State by reason of the lease it was his default; and that, therefore, it was entitled to judgment over against him for any amount adjudged against it. The trial court awarded the State a judgment as prayed against both defendants, and gave Empire Gas & Fuel Company a like judgment over against Tippett. The Supreme Court affirmed the judgment holding that it was not the legislative intent to give

all the bonuses or rentals either to the lessor or to the State and that the phrase "and like amounts to the owner of the soil," as used in Art. 5368, supra, means that the owner of the soil is to get one half and the State the other half of any bonus paid for an oil lease on lands covered by the *Relinquishment Act*.

Then came Shell Petroleum Corporation v. Tippett (Civ. App.), 103 S. W. (2d) 448 (er. ref.), the facts of which are almost an exact parallel to those alleged in the petition now before us. For two leases Shell's assignor had paid Tippett $11,244.00 as bonuses and $337.75 as delay rentals. The State sued Shell for 1/2 these amounts and recovered a judgment, which Shell paid. Shell then sued Tippett on three grounds of recovery: (1) breach of warranty; (2) reimbursement for money paid Tippett under mutual mistake; and (3) subrogation to the State's right of recovery against Tippett. The court held that, since Tippett warranted to Shell's assignor an unincumbered title which was breached by his retention of one half the bonuses and delay rentals, property of the State, to secure the payment of which a lien existed in favor of the State against the lessee and its assignee, Shell, Tippett had breached his warranty, for which he was liable to Shell; that Tippett and Shell were jointly and severally liable to the State for its half of said money; that as between Tippett and Shell, the primary obligation was on Tippett; that, therefore, when Shell paid the obligation Shell's right of indemnity arose as against Tippett.

Under similar facts the Supreme Court, in Allison v. Stanolind Oil & Gas Co., 133 Texas 540, 129 S. W. (2d) 267, speaking through Justice Critz, said, "The fact of this case bring it directly under the rules of law announced in Shell Petroleum Corp. v. Tippett (Tex. Civ. App.), 103 S. W. (2d) 448, (writ refused). By refusing the writ of error in the Tippett case, we approve the opinion. Also, we here now approve such opinion in its entirety."

Shell Oil Co., Inc., v. Lutz (Civ. App.), 155 S. W. (2d) 392 (er. ref. want of merit) is a late case in point.

■ The language of the contract quoted by the Court of Civil Appeals does not differentiate the case at bar from those we have cited. The sentence authorizing the lessee to deduct and

pay to the State its share of the royalty "in the event any of the lands embraced in this lease are classified as mineral lands" merely recognizes Art. 5367, supra, reserving to the State a 1/16 royalty for the school and asylum funds and says that Cross will be content with the other half of the 1/8 royalty ordinarily payable to the owner. It is of no import that the next succeeding sentence of the contract, referred to by the Court of Civil Appeals, does not allow any deductions from moneys to be paid to the owner, because Art. 5368, supra, expressly provides that the lessee "shall in every case pay the State ten cents per acre per year." No part of that could ever go to the owner or become due by him under the lease, hence there could never be any occasion to "deduct" from his part of the royalty to pay it. All of it belongs to the State and is required to be paid to the State by the leaseholder. That lessee agreed "to fully comply with all present and future laws of the State of Texas, the rules and regulations of the Commissioner of the General Land Office," etc., cannot be construed as an agreement to pay one half the bonus to the State. That language evidently refers to obligations expressly imposed by the *Relinquishment Act,* e. g., the provisions of Art. 5369 relating to drilling offset wells or those of Art. 5372 requiring a log on any well drilled to be furnished to the land commissioner. In this connection it is significant that the lease involved here was executed on February 8, 1928 (more than four months before the opinion in Greene v. Robison, supra, was handed down), at a time when it was generally thought that all bonus money went, under the *Relinquishment Act,* to the lessor, just as was the situation in the *Tippett* case, supra. It is more reasonable, therefore, to suppose that the parties to the lease were contracting with respect to obligations then known to be due to the State rather than to those then unknown.

Stanolind Oil & Gas Co. v. Cerf (Civ. App.), 110 S. W. (2d) 177 (er. dism.), cited by respondent, is not contrary to the conclusions herein expressed. In that case the consideration for the lease was *ten dollars and other good and valuable considerations* paid, and Cerf testified, without dispute, that lessee agreed to pay him, for his own use and benefit, $2,650.00 in cash and to pay to the State any and all sums of money as might then be due or which might thereafter be demanded by it. Moreover, lessee's attorney, in reporting his examination of the title, advised lessee it would have to pay the State a bonus of $1,280.00. So it was correctly held that the parties

had contracted that lessee would pay the State the bonus in addition to what it paid Cerf.

The judgments of the courts below are reversed and the cause is remanded to the district court for further proceedings consistent with this opinion.

Opinion adopted by the Supreme Court May 13, 1942.

Rehearing overruled June 10, 1942.